UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID ARISMAN,

        Plaintiff,

  vs.

J. S. WOODFORD, et al.,

        Defendants.

No. C 00-4049 PJH (PR)

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

    This is a civil rights case filed pro se by a state prisoner. Defendants Brau, Brown, Calvo, Chipman, Downs, Flax, Francis, Fuller, Johnson, Keesee, Mahoney, Morgan, Nollette, Petrakis, Ponath, Stone, Thompson, B. Woodford, and J. Woodford have filed a combined motion to dismiss and for summary judgment. Plaintiff has opposed the motion and filed two motions. For the reasons set out below, plaintiff's motions are denied and defendants' motions are granted in part and denied in part.

**BACKGROUND**

    In the initial review order the court considered plaintiff's twenty-five claims, dismissing ten with prejudice and dismissing fifteen others with leave to amend. Plaintiff amended. One hundred and seventy-seven defendants were named in the 215 page amended complaint, and the retaliation claim alone was 162 pages long. In its review of the amendment the court concluded that some of plaintiff's claims were sufficient to proceed, but many claims were dismissed with prejudice, and others were dismissed with leave to amend. Rather than file an amendment, plaintiff attempted to appeal. The court of appeals dismissed the appeal for lack of jurisdiction, there not having been a final judgment. On remand, plaintiff not having amended, the court ordered service of those

claims which it had found in its review of the amendment to be sufficient to state a claim.

In the order of service the court concluded that the following claims could proceed and ordered service on the defendants named in the list below. All others were dismissed. The claims that were allowed to proceed were:

[1] Plaintiff's retaliation claims that:

[a] defendants Woodford, Calderon, Wooton, Francis, Flax, Petrakis, Rubia, Brau and Johnston housed him in a punitive unit;

[b] Fuller ordered searches of his cell;

[c] Nollette told another inmate that plaintiff had informed on him;

[d] Thompson ordered searches in such a way as to reveal that plaintiff had informed on other inmates;

[e] Brau and J. Woodford initiated rule violation proceedings for plaintiff's writing to a state senator; and

[f] Morgon failed to give plaintiff his legal papers;

[2] claims against B. Woodford, Brown, Dinkins, Keesee and Chipman for failure to provide medical care for his boils;

[3] claims against defendants Flax and Dillon regarding their failure to obtain his records of previous EEGs;

[4] his claim against Dr. Foster regarding care for his bowel infection;

[5] his claim against Stone for dental care;

[6] ETS claim against Warden Woodford;

[7] his contention that Warden Woodford prevented him from obtaining a necessary form for gaining access to the courts;

[8] his contention that Warden Woodford allowed conditions of confinement that violated his Eighth Amendment rights;

[9] claims against Calderon, Wooton, Francis, Rubia, Johnston, Petrakis, and Flax for classifying him for undesirable housing and failing to provide any mental health observation or care; and

[10] his claim that J. Woodford, Francis, Brau, Fuller, Calvo, Ponath, Foster, Down, Lyles, Majoney, Bronswich, Griess, Flax and Platmia violated his rights under the Americans with Disabilities Act.

///

///

**DISCUSSION**

**A.     Plaintiff's Motions**

Plaintiff's motion for sanctions is largely a request that prison authorities be ordered to provide him with access to his legal documents, a continuing issue in this case. Plaintiff has filed an opposition to the motion for summary judgment and has not asked for more time pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, so the court must assume that he has obtained sufficient access to his legal documents to render the motion moot.

Plaintiff's motion that defendant McPherson be served at his office in Sacramento will be denied because McPherson was not one of the defendants the court ordered served.

**B.     Defendants' Motion to Dismiss or for Summary Judgment**

**1.     Motion to Dismiss on Statute of Limitations Grounds**

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In California, the general residual statute of limitations for personal injury actions changed from one year to two years in an amendment effective January 1, 2003. *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004). Under California law, an extension of a statute of limitations does not apply to claims already barred under the old statute, unless the legislature provides otherwise. *Id.* In the case of the personal injury statute, the legislature provided otherwise only for victims of the 9/11 terrorist attacks. *Id.*

The result as to all of the statute of limitations arguments in the present motions is controlled by whether plaintiff is entitled to tolling. A federal court must give effect to a state's tolling provisions. *Hardin v. Straub*, 490 U.S. 536, 543-44 (1989). California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life." Cal. Civ. Proc. Code §

3

352.1(a). The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years. *Id.*

Although when read literally section 352.1 tolls the statute of limitations only for persons who are serving terms of imprisonment less than for life, California courts have held that a prisoner serving a life sentence is entitled to the tolling benefit of section 352.1 (formerly section 352(a)(3)). *Grasso v. McDonough Power Equip.*, 264 Cal. App. 2d 597, 601 (1968). "Grasso remains the most accurate prediction of what the California Supreme Court would hold as the law." *Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998). Because plaintiff has been sentenced to death, it necessarily includes the element of being incarcerated for life. He therefore is entitled to tolling.

All of the claims remaining in the case arose no earlier than November of 1999. The original complaint in this case was filed in 2000 and the First Amended Complaint, which is now the operative complaint, on June 11, 2002, both filings being within three years of accrual of plaintiff's claims. Accordingly, the motions to dismiss on statute of limitations grounds are denied.

**2.      Defendants' Motion for Summary Judgment**

    **a.      Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the

pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

### b. Medical Care Claim (claim 2)

#### *i. Standard*

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *Id.*

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  *Id.* at 1059-60.

A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Neither negligence nor gross negligence will constitute deliberate indifference.  *Id.* at 835-36 & n.4 (1994); *Estelle v. Gamble*, 429 U.S. at 106.  A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists

and have actually drawn the inference.  *Id.*  If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment.  *Id.; see, e.g., Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

*ii.     Analysis*

Defendants B. Woodford, Brown, Keesee and Chipman moved for summary judgment on plaintiff's claim that they failed to provide sufficient medical treatment for a boil in November of 1999.  Plaintiff told B. Woodford and Brown about the boil on November 27, 1999.  Brown said he would try to get plaintiff over to the clinic.  Decl. Young, Ex. A (Arisman deposition) at 34.  On November 29, plaintiff tried to show the boil to Chipman and Keesee, but they did nothing.  *Id.* at 33-34.  On December 2 plaintiff was seen at the clinic and the boil was treated.  Decl. Dull at 264.

Plaintiff alleges that the boil "was painful" and that he had to take Motrin because of the pain.  Arisman deposition at 31, 33.  Although he contends in his opposition that it was "potentially life-threatening," he presents no evidence of that.

In the case of B. Woodford and Brown the delay was five days, and was three days in the case of Chipman and Keesee.  Given the relatively minor nature of the problem and the availability of painkillers, these defendants were not deliberately indifferent.  Their

6

motion for summary judgment on this claim will be granted.

### c. Claim Against J. Woodford for Excessive Noise (claim 8)

In his declaration plaintiff clarifies that this claim is about noise, and explains that his references in the First Amended Complaint to failure to enforce the rules against gambling and use of transfer lines (fishlines) to move items from cell to cell were simply because those activities add to what he contends is unbearable noise. Arisman deposition at 80. That is, he is not attempting to assert separate claims as to the Warden's failure to prevent these activities, and indeed there would not appear to be any constitutional basis for such claims in any event.

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991))

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." *Farmer*, 511 U.S. at 834 (inmate safety); *Wilson*, 501 U.S. at 302-03 (general conditions of confinement); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).

Neither negligence nor gross negligence will constitute deliberate indifference. *Farmer*, 511 U.S. at 835-36 & n.4; *see also Estelle*, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842. This is a question of fact. *Farmer*, 511 U.S. at 842.

Public conceptions of decency inherent in the Eighth Amendment require that inmates be housed in an environment that, if not quiet, is at least reasonably free of excess noise. *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). For example, a plaintiff's allegations that "at all times of day and night inmates were 'screaming, wailing, crying, singing and yelling,' often in groups, and that there was a 'constant, loud banging'" are sufficient to defeat defendants' motion for summary judgment on plaintiff's Eighth Amendment claim. *Id.*

Plaintiff's deposition contains extensive testimony about the noise level and its effects on him. Arisman deposition at 79-90. The court concludes below that plaintiff's claims for injunctive relief must be dismissed, leaving only the claims for damages from events occurring prior to the operative complaint. The only relevant time period, therefore, is prior to the date the First Amended Complaint was filed on June 11, 2002. Plaintiff's deposition testimony seems to go to current conditions, so is irrelevant to this claim. Arisman deposition at 79-90.

Plaintiff has attached a declaration by inmate Jerry F. Stanley to his First Amended Complaint as exhibit I. Compl. Ex. I. It supports his claims that the noise levels were so high as to make sleep difficult, but makes no specific evidentiary allegations regarding Warden Woodford. Plaintiff also makes many allegations regarding noise in the verified First Amended Complaint, but his only specific allegation regarding Woodford is that he complained to her about the noise and failure to enforce rules. Compl. 196-200.

Warden Woodford's position is that she did not have the necessary "deliberate indifference" to the noise, as shown by her response to an administrative appeal by plaintiff

8

1  in November of 1999 in which she instructed staff to hold training sessions on controlling
2  noise and that disciplinary action would be taken for disregard of the rules and policy with
3  regard to noise.  Decl. Dull at Ex. T.  That is, the only evidence relating this defendant to
4  noise in 1999-2002 is plaintiff's contention that he complained to her and her evidence that
5  she ordered steps taken to reduce it.  On this record, there is no genuine issue of material
6  fact going to Woodford's state of mind, and she is entitled to summary judgment on this
7  claim.

        **d.**    **Qualified Immunity**

9        Defendants J. Woodford, B. Woodford, Brown, Chipman, and Keesee contend that
10 they are entitled to qualified immunity on the medical care and noise claims.
11       The defense of qualified immunity protects "government officials . . . from liability for
12 civil damages insofar as their conduct does not violate clearly established statutory or
13 constitutional rights of which a reasonable person would have known." *Harlow v.*
14 *Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample
15 protection to all but the plainly incompetent or those who knowingly violate the law;'"
16 defendants can have a reasonable, but mistaken, belief about the facts or about what the
17 law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting
18 *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the
19 constitutional violation occurred, the [official] should prevail if the right asserted by the
20 plaintiff was not 'clearly established' or the [official] could have reasonably believed that his
21 particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.
22 1991).  Qualified immunity is particularly amenable to summary judgment adjudication.
23 *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).
24       A court considering a claim of qualified immunity must first determine whether the
25 plaintiff has alleged the deprivation of an actual constitutional right, then proceed to
26 determine if the right was "clearly established." *Wilson v. Layne*, 526 U. S. 603 (1999);
27 *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  The threshold question must be: Taken in the
28 light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right? *Saucier*, 533 U.S. at 201. As discussed above, the facts do not show that these defendants violated plaintiff's constitutional rights as to his medical care and noise claims. They therefore are entitled to qualified immunity.

### 3. Motion to Dismiss for Failure to Exhaust

#### a. Standard

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v Nussle*, 122 S. Ct. 983, 988 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v Churner*, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 122 S. Ct. at 992.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision at the director's level satisfied the exhaustion

requirement under § 1997e(a).  *Id.* at 1237-38.

Nonexhaustion under § 1997e(a) is an affirmative defense.  *Wyatt v Terhune*, 315 F.3d 1108, 1119 (9th Cir 2003).   It should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Id.* (citations omitted).  In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice. *Id.* at 1120.

**b.    Analysis**

*i.    Thompson Retaliation Claim (claim 1d)*

One of the claims that the court allowed to proceed was plaintiff's contention that in February of 2000 defendant Thompson retaliated against him for complaining about conditions on the unit by ordering searches of the cells next to his, which he contends caused the occupants to conclude that he had "snitched" on them, exposing him to dangerous attacks.  The affidavit of Denise Dull, the litigation coordinator, is evidence that plaintiff's administrative appeals filed after the date of the cell searches did not raise this claim.  Decl. Dull Ex. A-EE.

In his opposition plaintiff contends that he is missing many documents which have been lost or destroyed by prison authorities.  Pl. Opp. 15-16.  He does not make any specific allegations as to the Thompson claim, in contrast to several other exhaustion claims.  Thompson therefore has carried his burden to show absence of exhaustion on this claim.  The motion will be granted as to him.

*ii.    Brau and J. Woodford Retaliation Claim (claim 1e)*

The Dull affidavit is evidence that plaintiff's administrative appeals filed after the claim arose in November of 2001 did not raise this claim.  Decl. Dull Ex. A-EE.  In his verified opposition plaintiff says that he appealed the rule violation conviction.  Doing so might exhaust some kinds of claims, for instance that the conviction violated due process,

but that it is not the same thing as exhausting a First Amendment claim that these defendants retaliated against him. The motion will be granted as to this claim.

### iii.     *Morgan Retaliation Claim* (claim 1f)

Morgan contends that plaintiff did not exhaust this claim, which arose in April of 2002. In opposition plaintiff contends that he did exhaust, but concedes that he did not complete exhaustion until after the First Amended Complaint was filed. The administrative appeal he mentions therefore was not sufficient to exhaust. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (action must be dismissed unless prisoner exhausted *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending). The motion will be granted as to this claim.

### iv.     *Claim That Flax Did Not Obtain EEGs (claim 2)*

The Dull affidavit is evidence that plaintiff's administrative appeals filed after the claim arose in February 4, 1999, did not raise this claim. Decl. Dull Ex. A-EE. In his verified opposition plaintiff says that has no evidence that he exhausted, but that he did. This is not sufficient. The motion will be granted as to this claim.

### v.     *Access to Courts Claim against J. Woodford* (claim 7)

Plaintiff contends that the Warden refused to provide him with a CDC form he says is required to file a small claims court action. The Dull affidavit is evidence that plaintiff did not exhaust this claim. Decl. Dull Ex. A-EE. In opposition, plaintiff refers to an administrative appeal attached to his First Amended Complaint as exhibit J. Although that administrative appeal does complain about difficulties in obtaining trust account statement for lawsuits, it contains no factual allegations whatever about events at the warden's level. It is not necessary for exhaustion that the defendant be named in the grievance, *Jones v. Bock*, 127 S. Ct. 910, 923 (2007), but the facts of the claim must be included, *see O'Guinn v. Lovelock Correctional Center*, 502 F 3d 1056, 1062 (9th Cir. 2007). The facts of what the Warden allegedly did are not included in the grievance. The motion will be granted as to this claim.

///

      *vi.*  *Mental Health Care Claim Against Flax (claim 9)*

  The Dull affidavit is evidence that plaintiff's administrative appeals filed after the claim arose in 1999 did not raise this claim. Decl. Dull Ex. A-EE. Plaintiff has presented nothing to challenge this except his belief that he must have exhausted. The motion will be granted as to this claim.

      *vii.*  *ADA claim (claim 10)*

  A prisoner bringing an ADA claim must exhaust prison administrative remedies, notwithstanding the absence of a federal administrative exhaustion requirement in that statute. *O'Guinn*, 502 F 3d at 1061. Plaintiff identifies his administrative appeal log number 99-2259 as the appeal in which he exhausted this claim, but he is incorrect. Initially in that appeal he complained that "psychiatric patients" were being housed in administrative segregation where their yelling and beating on the bars disturbed him. Decl. Dull, Ex. J. At the appeal from the first formal level to the second formal level he added a contention that housing them in ad seg violated the ADA. *Id.* He simply did not contend that *he* was being housed in ad seg because he was perceived to be mentally ill or that doing so violated *his* rights under the ADA. The motion will be granted as to this claim.

**C.**  **Injunctive Relief Claims**

  Plaintiff is a member of the class in a class action brought by prisoners on San Quentin's death row, the subject of which is conditions on death row. *See Lancaster v. Tilton*, No. 79-1630 WHA. Because plaintiff is a member of the *Lancaster* class, his requests for injunctive relief cannot be considered in this case. *See McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991) (individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is a pending class action suit involving the same subject matter); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc) ("Individual members of the class and other prisoners may assert any equitable or declaratory claims they have, but they must do so by urging further actions through the class representative and attorney, including contempt proceedings, or by intervention in the class action."). The injunctive relief claims will be dismissed.

**CONCLUSION**

1. Plaintiff's motion for sanctions (document number 85 on the docket) is **DENIED** as moot. His motion to serve a defendant (document number 88) is **DENIED** because the court has dismissed his claims against that defendant.

2. The motion to dismiss for failure to exhaust (document 90) is **GRANTED** as to claims 1d, 1e, 1f, 2, 7, 9, and 10. The motion to dismiss on statute of limitations grounds is **DENIED** for the reasons set out above.

3. The motion for summary judgment is **GRANTED** as to claims 2 and 8.

4. Plaintiff's requests for injunctive relief are **DISMISSED** without prejudice to raising his contentions to class counsel in *Lancaster*.

5. The remaining claims are 1a, 1b, 1c, 2 (Dinkins), 3 (Dillon), 4, 5, and 6.

6. The court has established a Pro Se Prisoner Mediation Program in which certain prisoner civil rights cases are referred to a neutral magistrate judge for mediation. One or more conferences are conducted at the plaintiff's prison.

This case is referred to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. The proceedings shall take place within forty-five days of the date this order is entered. Magistrate Judge Vadas shall conduct mediation proceedings and file a report thereafter. The proceedings are confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree.

In view of the referral, this case is **STAYED**. If it is not settled, the court will enter a new scheduling order. The clerk shall mail a copy of this order to Magistrate Judge Vadas in Eureka, California. In view of the size of the file, transmission of it to Judge Vadas shall be arranged informally by staff.

**IT IS SO ORDERED.**

Dated: March 31, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.00\ARISMAN049.MSJ-DISM.wpd

14